Thank you, Your Honor. May it please the Court, John Jordan on behalf of the petitioner, Mr. Williams. Your Honor, it's not to break the string of immigration cases. This is a Batson case. We can handle that. It were interesting. I rely heavily here, of course, on the Miller L. case and the Schneider case that I provided to the Court. I hope Your Honor's got my — I apologize for the lateness of it, the 28J letter, excerpting the language in Schneider where they go right to the heart of the petitioner's argument here, that when a judge, a trial judge, is confronted with a Batson issue, and we're here, the judge has made a serious — what I think is a serious finding that the prosecutor, that there's a prima facie case of discrimination, that Batson and — This is the second Batson challenge. Excuse me, Your Honor? This is the second Batson challenge. That's the second Batson challenge. That's the first one. That's the first one. The judge has made the decision as to the challenge of, I think it was Jura S., that there is a prima facie case here, that Batson and Miller L. require the judge, as the Schneider Court says, that he must consider all of the circumstances that bear upon the issue of racial animosity, that they must be considered. Now, looking at the case cited just recently, Thaler, by the Attorney General, I would say the only real difference here is that it has to be, of course, all the available circumstances. In Thaler, the judge wasn't available, and that wasn't dispositive. There were other factors that the second judge in Thaler could rely on. Counsel, what — I hope you can help me with this. I — you know, it does appear that the standard set by the Supreme Court in Batson versus Wheeler in the State are different, that Batson is much broader. However, the Supreme Court has basically left it to the States to fill in the blanks on that. And even after Batson, it's pretty clear that the California Supreme Court, despite Batson, indicates that the defendant must show, unquote, a strong likelihood of racial bias. And it basically conflates Batson and that standard. And I'm just wondering, it looks to me like what happened in the Wade case, which is one that talks about what the Supreme Court did — I mean, the California Supreme Court did. It looks like that's exactly what took place here. So if that's true, if the Supreme Court left it to the States to fill in exactly how Batson would be applied, the California Supreme Court perhaps conflated that a little bit with its own jurisprudence. Under AEDPA, how can we help you? Because the reality is the Supreme Court has simply not said that what happened here is wrong. We have to rely upon the State Supreme Court's determination unless it is contrary to Supreme Court law. Do we not? So I'll try to answer that question in a couple of parts. First, having worked on some recent State briefs, I think actually the California courts have now come into agreement with the Batson ruling and there is no longer that strong likelihood difference. I think that's changed. But at the time of this case, though, was that true? At that time, yes. The California courts were still applying the strong likelihood. Right. But wasn't there later a case that said that that's improper and that they must do that? And California recognized that and moved it in. But even under the strong likelihood standard, the judge here was still violating the – in violation of the direct rule of Batson. Yes, it has to be an unreasonable application of Supreme Court law. I argue in my brief that because he used the strong likelihood, that standard doesn't apply. But I strongly believe that even if it does apply, what could be more unreasonable than a judge ruling on a Batson case, not following the very words of Batson, telling him he has to look at all the available circumstances? And what could be more relevant? What is the most powerful circumstance in the fact that two blacks were challenged within, according to the transcript, a very short period of time, and the judge is going to close his eye to the first challenge? Well, I guess what – please help me with this because I take Batson challenges very seriously. But the reality is the trial judge, I believe, thought that the Court was following what the California Supreme Court had said. The U.S. Supreme Court and Batson in later cases has not said, even though California may have later changed its mind, that what was done in this case was an incorrect standard. It did not say anything about that yet. So under the circumstances, even if California changes its view later, how can we grant your client relief under AEDPA given the standard? Because, Your Honor, I think it is in violation of the standard. And again, dropping a footnote, this change in California law, I think, is response to a specific Federal holding that if I can find out, submit under a later 20HA letter. But under AEDPA, they still have to follow Batson. I'll point out, I think the California judge wasn't even following California law when he did what he did. The California Court of Appeals decision tried to distinguish the California cases, two California cases I cited. I'm sorry. Turner, People v. Turner, 2001, 90, Calab, 4th, 413. That seems to clearly support Mr. Williams's position here. And the ---- I'll cite on that again, please. People v. Turner, 90, Calab, 4th, 413, 2001. It's discussed by both parties in our briefs. And it's in the ---- I just wanted to make sure I'm looking at the right one. Yes, Your Honor. I found the attempt to distinguish that case by the California Court of Appeals here very, very thin. It seems to be right on point.  And I would just like to point out that in the first challenge, the judge didn't want to hear the first challenge. He would always ask, why did you challenge the two jurors? It doesn't seem to be a unique situation for this judge. I just can't conceive of why he didn't want to hear about the first challenge. And under Batson, Batson required him to do that. But does Batson require that where there's a series of Batson motions in seriatim and the first one the judge says I don't see any problem with and doesn't go into any detailed finding and doesn't question further, later on does question and makes a record and eventually there are minorities suited on the jury, does Batson require that because there is one or two other subsequent challenges made that are not successful, the judge has to go back and revisit the first one where he simply said the first one and quickly admit I don't see any problem here, go ahead. Is that required to go back and redo it? I think so. And Snyder says exactly that, that when you have a situation where the judge has finally found at one point that this is a prima facie case of discrimination, which is a serious thing. He found that he asked the counsel to justify the rationale and he did and he showed the questions that the juror had answered and why they were struck and he found that appropriate. He didn't find a violation of Batson. So does that then mean without a Batson violation he has to go back and revisit the first challenge? If he has, as Snyder says, if there's any doubts, any issues about that second challenge, you've got to go back and look at it. Because we're talking about the same acts. But the judge didn't find a problem with the second challenge. No, he didn't, but he did find that there was a prima facie case of discrimination. So with that issue, in making, in considering it, as Snyder says, the Supreme Court made clear in Miller L. that in considering a Batson objection, so the judge here was considering a Batson objection, he's got to look at all the circumstances surrounding it. Do you want to save any rebuttal time? Oh, yes. I do. I don't know. Okay. If there are any questions, I'll stop here. Okay. We'll hear from the government and we'll hear from you again. May it please the Court. Peggy Ruffray from the Attorney General's Office for Respondent. Your Honors, this is a case about the general versus the specific. The Supreme Court has repeatedly held that under ADPA, there has to be a specific rule of law from the United States Supreme Court that supports the grant of relief. And there simply is no Supreme Court case addressing the issue that arose here. In fact, there are very few cases addressing this particular issue, period. There's this case, and then subsequent to this case, the California Supreme Court came out with a case called Avila, which is cited in our briefs. And frankly, those are the only two cases that I have found in a survey of all State and Federal courts that discuss the issue at all. That's the retroactive reexamination of somebody passed over in a Batson challenge? Correct. Correct. The specific situation where the first Batson challenge, it's raised, but the court finds no prima facie case. And then there is a second challenge. The court says, I do find a prima facie case. As to the second juror, the prosecutor justifies those reasons and gives sufficient nonracial reasons. And the judge says, at that point, I find that any pattern or presumption is dispelled, so I don't feel I need to revisit that first decision where I already made the decision that there was no prima facie case. So that is the specific issue before the court. I can say, when you have the first challenge, it's kind of hard to show a pattern, because there hasn't been any pattern at that point, right? Correct. So what difference does it make? Let's just say hypothetically that in the second challenge, that unlike what actually happened here, that the court found that there was, in fact, an intentional removal based on impermissible reasons. Would that have had any bearing on whether the court needed to revisit the initial challenge? I think it could. I think it could. I mean, I think there's no per se rule, and the court has the option of implementing its Batson procedures in any way, as Your Honor pointed out. The Supreme Court in Batson and then subsequently reaffirmed in Johnson said, we're not going to impose any specific procedures on the States, which therefore, by definition, means that there can be some variation and that the California Supreme Court could come up with its own rule in how to handle this particular situation. As a matter of fact, the Supreme Court kind of went out of its way to say, we're not going to try to tie the hands of the States, right? It did when it was invited to do so in those early cases. So in light of that, I think it's very clear that, at the very least, what the State And I think the ‑‑ I went through the whole survey of United States Supreme Court cases that addressed this clearly established requirement, and again and again, they have said, we mean this in a very narrow sense. There has to be a rule that squarely establishes the rule that the petitioner is relying on. Counsel for the petitioner really indicated, did he not, that the trial judge totally failed to respond to the first objection? He just said, when the defense attorney raised it, saying, this person is the same as everyone else except they're black, and he's been stricken, the judge didn't say to the counsel for the government, well, why did you strike him? He said, don't worry about it, we'll just see what happens next. He found no prima facie case. It is the defense burden at that point to say something about it, and the showing was extremely minimal. You may also recall that this was a case where the defense attorney had a very difficult client. He had at one point represented himself, and then he went through several other attorneys, and at that very first Batson challenge, where there was found to be no prima facie case, the defense attorney almost said, I'm making this because my client wants me to. And the client actually did even interrupt during those proceedings. So it was almost as if the attorney was saying, and the attorney admitted at this point it's hard to establish a pattern. So it was almost like the attorney was saying, I'm making this because my client wants me to, but I don't know that there is necessarily any demonstration that can be made at this point. In the ultimate trial, am I correct that there was one black juror impaneled and one black juror as an alternate? Is that right? Correct. And there were also, there were a total of nine black jurors on the entire panel, or at least, there may be more that the record doesn't indicate, but really there was this one that was struck, there was no prima facie showing made. There was the other one that was struck where there were very compelling reasons. She gave three, she wrote down on her questionnaire as to three different questions that she didn't think she could be fair and impartial. So clearly there was a reason for the prosecutor to strike her. And I just wanted to mention the more recent case that the United States Supreme Court decided, Thaler v. Haynes, which we did send the 28-J letter in. It was just decided recently. And I think that really speaks to the particular issue here because that was another clearly established case. That was all about what is clearly established Supreme Court law. But this is the first time that it has come up in the Batson context specifically. And what the Court said was Batson has this requirement that a judge must undertake a sensitive inquiry into such circumstantial and direct evidence of intent as may be available. The Petitioner had said, well, that general language is enough to establish this rule that the judge has to personally observe the juror's conduct if the DA is saying I'm dismissing them because of some demeanor. And the Supreme Court said, well, that is very general language and there's nothing about that that leads you to this very specific rule about you have to personally observe the demeanor. So therefore, it's not clearly established and it wasn't unreasonable for the State court to say we're going to affirm, based on all of the other reasons, even though the judge didn't personally observe that conduct. It's not like that rule. One does not follow from the other. And I think the same holds true here where what Petitioner is relying on is that very general language in Batson that you have to consider all relevant circumstances. Well, again, it's quite a leap to go from this broad all relevant circumstances to this very specific the Court must reconsider its earlier no prima facie case finding if in the subsequent challenge it does find a prima facie case. Unless there's anything further. Thank you. I don't believe so. Thank you, counsel. We'll hear again now from Mr. Jordan. Just for the first, responding to Respondent's argument that the defense counsel here seemed to make this objection just as the instance of his client. I'm looking at the excerpts of record, page 228 to 220, 230. He spoke quite vehemently in favor of this. In fact, he moved for a mistrial on page 230 in response to this first challenge. He pointed out that there was nothing in Juror B's questionnaire that indicated any bias or any reason why he wouldn't be an ideal juror, as he pointed out that the juror in question answered no to all those, you know, questions, do you have any problems with sitting here, that he had a typical job. And the judge just, I don't mean to be glib, but kind of poo-pooed it and just said, well, let's move on and see what happens. Your Honor pointed out that there was one black juror, which is true, but the Supreme Court did point out in Snyder, citing a case from this circuit, Vasquez-Lopez, that even the exclusion of one juror for racial reasons is true. Now, let me ask you this. The lower court in this case, Judge Patel, said that if a bias analysis is required and I'm wondering what you want us to do by the reviewing court, is it impossible to do so on the record? The appellate record and the habeas record contains any questionnaire for juror B or any other juror. And the trial counsel did not elaborate that for the factors that are necessary in essence, she's saying. What would you have the Court do in this case? Under Paulino 1, I would ask the Court to remand it back to the district court for an evidentiary hearing. That she says is impossible to do. Well, I think we can look into the – it was a pro se petition below without an attorney. We can look to the state district court file and see if we can find these questionnaires. And the original prosecutor and the original defense attorney can be called to testify. Certainly on the record she had with the pro se defendant, she didn't have that in front of her. That's absolutely true. But that's why with an attorney, perhaps that could be corrected. Okay. Thank you both for your argument. Thank you, Your Honor. The case of Williams v. Haviland is submitted.
judges: Hogan, Hug, Smith M.